IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| PAUL GARZA, | § | |
| | § | |
| Movant, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-279-O |
| | § | (Criminal No. 4:19-cr-374-O(1)) |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

**OPINION and ORDER DENYING MOTION TO VACATE UNDER 28 U.S.C. § 2255 and DENYING CERTIFICATE OF APPEALABILITY**

Before the Court are Defendant Paul Garza ("Garza")'s motion to vacate under 28 U.S.C. § 2255 and supporting brief (ECF Nos. 1, 1-1), along with the government's response (ECF No. 7). Garza did not file a reply. After considering the § 2255 motion and brief, the response, and applicable law, the Court **DENIES** Garza's § 2255 motion.

**I.   BACKGROUND**

**A.   Underlying Facts**

In 2018, an FBI and ATF task force began investigating several members of the Sinaloa Drug Trafficking Organization, which was trafficking methamphetamine, heroin, and cocaine in the Dallas/Fort Worth area. Presentence Report ("PSR") at ¶ 8, CR ECF No. 257-1.[1] Paul Garza participated in this conspiracy by buying and selling methamphetamine. PSR at ¶ 12. During the course of the investigation, officers observed two transactions directly involving Garza. PSR at ¶¶ 13-14.

---

[1] "CR ECF No. ___" will hereafter refer to the docket number of documents filed in the underlying criminal proceedings, *United States v. Garza*, No. 4:19-cr-374-O(1) (N.D. Tex). "ECF No. ___" refers to the docket numbers of documents filed in this civil proceeding assigned to Garza's § 2255 motion.

1

In August 2019, Garza was arrested for possession of a controlled substance and evading arrest following his attempt to flee a traffic stop. PSR at ¶¶ 15-17. Officers recovered a cooler along the route Garza took during his attempted escape. PSR at ¶ 17. Inside the cooler, officers found several baggies of methamphetamine (roughly 260 grams); several baggies of marijuana (roughly 38 grams); a digital scale with white residue; $2,480 in currency; a glass vial with individually packaged pills (codeine and hydrocodone); and several sealed bags of THC oil products. PSR at ¶ 17. Garza's cell phone also contained messages indicative of drug trafficking. PSR at ¶ 18. Garza was initially released on bond. PSR at ¶ 18.

A couple months later, in October 2019, the task force executed a coordinated takedown of 25 individuals involved in the methamphetamine conspiracy. Trial Tr. 1, 106-07, CR ECF No. 321. Officers went to Garza's sister's (Georgia Corrales) residence and, although Garza was not in the house, observed marijuana and a psilocybin-grow operation in plain view. PSR at ¶ 19, CR ECF No. 257-1. The officers then secured the premises and, after obtaining a warrant, searched Garza's room and found (1) five bags of methamphetamine; (2) two baggies of marijuana; (3) a glass jar with GHB; (4) a digital scale; (5) a .38-caliber firearm containing six live rounds; (6) a 30-30 rifle; (7) a .22-caliber rifle containing 20 live rounds; (8) a .223-caliber rifle with one live round chambered and 38 live rounds in the seated magazine; (9) additional rounds of ammunition; and (10) $18,577 in currency. PSR at ¶ 19. During that search on October 23, 2019, officers were made aware Garza was detained at a traffic stop by City of Arlington police officers, and he was brought to his sister's house and taken into federal custody. PSR at ¶¶ 19-20.

      B.      **Hiring of Retained Counsel, Dismissal of such Counsel, and Subsequent Representation by Appointed Counsel Derek Brown**

Following his arrest, Garza retained two attorneys to represent him in the federal proceedings, Matthew Toback and Dane Harbour, and they entered their appearances on October 24, 2019. Notices of Attorney Appearances, CR ECF Nos. 44-45. Garza and the government, on November 6, jointly moved to continue the time to indict. Joint Mot. Continuance 1-3, CR ECF No. 139. Then, on November 26, Garza's attorneys moved to withdraw from the case based on an "irreconcilable conflict between the defendant and defense attorney[s]." Mot. Withdraw 1-2, CR ECF No. 185. Garza's original attorneys explained that they had advised Garza to accept a plea offer prior to an anticipated indictment, but Garza refused. *Id.* The Court granted the motion to withdraw, and appointed new counsel, Derek Brown, to represent Garza. Order and CJA 20 Form, CR ECF Nos. 188 and 192. The following week, a grand jury named Garza in a three-count indictment, along with two other members of the conspiracy. Indictment 1, 4-5, CR ECF No. 195. Garza was named in Count One, alleging a conspiracy to possess with intent to distribute methamphetamine between February and October 2019. *Id.* at 1.

The case was originally set for trial on January 21, 2020. Scheduling Order, CR ECF No. 199. On January 9, however, Brown filed an unopposed motion for continuance, explaining that he had not yet completed his investigation of Garza's case. First Mot Continuance 1-2, CR ECF No. 225. The Court granted the continuance to meet the "ends of justice" and reset the trial a full month later, on Friday, February 21. Order Continuance, CR ECF No. 229. Then, two weeks before trial (on February 12)—after both of Garza's co-defendants pleaded guilty[2]—the government filed a superseding indictment naming only Garza. Superseding Indictment 1-3, CR ECF No. 233. Count One of the superseding indictment reasserted the conspiracy count; Count

---

[2] *See United States v. Martinez*, No. 4:19-cr-374-O-2, CR ECF No. 222 (N.D. Tex.) (where co-defendant T. Martinez entered a guilty plea on January 9, 2020); and *United States v. Trejo*, No. 4:19-cr-

3

Two was a substantive count that alleged Garza's possession of methamphetamine with intent to distribute based on the drugs found in his room at Corrales's residence on the day of his arrest; and Count Three alleged possession of a firearm in relation to a drug-trafficking crime, based on the firearms recovered at the time of seizure. *Id.* at 1-3. The following week—on February 18—Garza was rearraigned on the superseding indictment and pleaded not guilty to all three counts. Rearraignment Tr. 2, CR ECF No. 320.

### C. After Representation by Brown for several months, Garza requests a Second Continuance to Again retain new Counsel

At rearraignment, Garza confirmed to the Court that he had received a copy of the superseding indictment, and he had read and understood the nature of the charges therein. *Id.* at 2. The Court informed the parties that it had a scheduling conflict with a civil trial and that this trial would need to begin the following day, on Wednesday, February 19. *Id.* at 3. In discussing the trial schedule, Brown stated that "Mr. Garza does tell me that his family, and I contacted his sister this morning, has hired another attorney. I'm anticipating I'll be substituted out. I don't know who the new attorney might be." *Id.* at 4-5. The Court asked Garza directly if he knew who the attorney was, and Garza replied that, "[a]t this time I don't sir. My sister's taking care of all that." *Id.* at 5. The Court then told Garza to let his family know that the jury would be reporting for duty the following afternoon and that the trial would go forward. *Id.* at 5. But no new attorney entered an appearance.

Then, the following day, the voir dire phase of Garza's trial began. Trial Tr., CR ECF No. 321. The parties discussed the witnesses for trial and then recessed to consider their strikes. *Id.* at 56-57. Upon their return from the recess, Brown informed the Court that:

---

374-O-3, CR ECF No. 230 (N.D. Tex.) (where co-defendant A. Trejo entered a guilty plea on January 13, 2020).

> I have been strongly urged by Mr. [Garza] to request a continuance of this trial. Apparently, an attorney has been hired. I don't have confirmation of that, but he hired an attorney that, in Mr. Garza's opinion, did not give him a good service, requested that the first attorney be fired – that's how I was appointed -- and his family is, apparently, put earnest money down for Mr. Day [Carl Day] . . . And I placed a call into Mr. Day's office. Mr. Garza gave me the telephone number. Again, I'm urging a continuance.

*Id.* at 57-58. The Court orally denied the motion and then later entered an order explaining its reasons. *Id.* at 58; Order Denying Second Mot. Continuance 1-2, CR ECF No. 243. In its written order, the Court explained that it considered: "(1) the amount of time available, (2) the defendant's role in shortening the time needed, (3) the likelihood of prejudice from a denial, and (4) the availability of discovery from the prosecution." *Id.* at 2 (citing *United States v. Hopkins*, 916 F.2d 207, 217 (5th Cir. 1990)), CR ECF No. 243. In doing so, the Court found that:

> Defendant Garza was already given a prior continuance, decided to only notify the Court that he was replacing his attorney—an attorney appointed months ago after he fired his first attorney—the week of trial, and moved for a continuance only after voir dire was completed. Defendant Garza did not argue that there would be any prejudice suffered, and the only argument stated was that earnest money had been paid to another attorney. In light of the above, the Court finds that Defendant Garza's motion for continuance is **DENIED**. Accordingly, the trial will continue as scheduled.

*Id.* at 2. The Court did not, however, preclude Garza's counsel of choice from participating in the trial, had he chosen to do so.

### D. Garza is convicted on Counts One and Two but Acquitted on Count Three.

At trial, the government presented testimony from an FBI Special Agent, who was vigorously cross-examined by Brown; an investigating officer that served as the team lead for Garza's arrest; and three chemists regarding the weight and composition of the methamphetamine that was recovered during the investigation. Trial Tr. Vols. 1-2, CR ECF Nos.

5

321-22. After the parties rested their cases, the Court denied a defense motion for acquittal, and the jury deliberated for one hour before returning guilty verdicts on Counts One and Two and acquitting Garza on Count Three. Trial Tr. Vol. 2 at 9, 48-51, CR ECF No. 322.

### E.      Sentencing

Following Garza's conviction, a presentence report (as noted above) was prepared. Using a converted drug weight for the substances involved in Garza's offense, the PSR calculated a base offense level of 36. PSR at ¶ 31, CR ECF No. 257-1. It added two levels for possessing a dangerous weapon, for a total offense level of 38. PSR at ¶¶ 32, 39. Garza's prior criminal convictions resulted in a criminal history category of IV, and that led to an advisory guideline range of 324 to 405 months on Count One, and 240 months on Count Two. PSR at ¶¶ 53, 96.

At sentencing, Garza confirmed that he had reviewed the PSR with Brown and that he had no objections. Sentencing Tr. 2, CR ECF No. 323. The Court then adopted the factual findings and legal conclusions in the PSR. *Id.* at 2-3. The government requested a guideline sentence based on the conservative calculations in the PSR and the fact that Garza was a "dangerous individual" that created "dangerous situations both by trafficking in large amounts of methamphetamine and in making a habit, apparently, of fleeing from officers." *Id.* at 4-5. Brown, in turn, urged a downward variance based on abuse during Garza's childhood, his medical conditions, and his age. *Id.* at 5-9. After hearing Garza's allocution, the Court imposed a downward-variant sentence of 300 months on Count One and 240 months on Count Two, to run concurrently. *Id.* at 13-15.

### F.      Direct Appeal

Garza appealed his conviction and sentence through different appellate counsel, claiming that (1) the Court abused its discretion by denying him an additional continuance following voir dire, in order to substitute new retained counsel; (2) the Court erred by failing to require the government to disclose the identity of a confidential source (CS); (3) the Court erred by denying his suppression motion based on the search of his sister's residence; (4) the Court's drug-quantity calculation was erroneous; (5) the Court erred in applying the firearm enhancement at sentencing; and (6) Brown was constitutionally ineffective. *See United States v. Garza*, No. 20-10599, 2021 WL 6102533 (5th Cir. Dec. 23, 2021).

In rejecting all of these claims, the Fifth Circuit found: (1) the Court's denial of a trial continuance was neither arbitrary nor unreasonable; Garza failed to show he was seriously prejudiced by the Court's denial of his request; and Garza failed to show any abuse of discretion by the Court in denying the requested continuance; (2) Garza failed to demonstrate any clear or obvious error in connection with his Sixth Amendment claim because, although he complained globally about trial testimony referencing information provided by the CS, he pointed to no specific out-of-court testimonial statements by the CS that were improperly admitted at trial in violation of his confrontation rights; (3) the record established that "the officers' entry into and protective sweep of Garza's sister's home was valid both because they had a reasonable suspicion to believe the arrest warrant could be executed there and because the owner gave consent for them to enter;" (4) Garza's sentencing arguments did not "extend beyond [a] conclusory assertion," so they were deemed abandoned; and (5) the Fifth Circuit declined to consider his ineffective assistance of counsel claims, without prejudice to their being asserted in

7

a § 2255 proceeding. *Id.* at * 1-2. Garza now seeks relief through a motion under 28 U.S.C. § 2255. Mot. Vacate 1-11, ECF No. 1; Brief 1-9, ECF No. 1-1.

## II. GROUNDS FOR RELIEF

Garza, through counsel, asserts that he received ineffective assistance of counsel in several different ways:

> 1. "[T]rial counsel was ineffective for delaying the requested continuance until trial had already been under way before informing the Court of Garza's retained counsel."

Mot.Vacate 4, ECF No.1 (citing Brief 8, ECF No. 1-1). Garza also "reurges his ineffective assistance of counsel claims raised on direct appeal," including that his trial counsel:

> 2. "Failed to file any pretrial motions, despite Garza's request to challenge the admission of evidence s[e]ized from his sister's residence;"
>
> 3. "Failed to file any discovery-related motions;"
>
> 4. "Failed to object to the start of trial the day after Garza's arraignment on the Superseding Indictment;"
>
> 5. "Offered no witnesses or other defense on Garza's behalf at trial;" and
>
> 6. "Failed to submit a sentencing memorandum or make any objections to the PSR."

Brief 9, ECF No. 1-1.

## III. APPLICABLE LAW and ANALYSIS

### A. Standard of Review

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence on four grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the

8

sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" 28 U.S.C. § 2255(a); *see United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (citation omitted).

"It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). "Section 2255 does not offer recourse to all who suffer trial errors." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981). It may also "not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). After conviction and the exhaustion or waiver of all appeals, the Court is "entitled to presume" that the prisoner "stands fairly and finally convicted." *Id.* at 164.

**B.    Law Applicable to Review of Ineffective-Assistance Claims under § 2255.**

Ineffective-assistance-of-counsel ("IAC") claims can be raised under § 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To establish IAC, "[F]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To show deficient performance under *Strickland*, the burden is on the defendant to show that his counsel's representation fell below an objective standard of reasonableness, by identifying acts or omissions of counsel "that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. A district court then determines whether, "in light of all the circumstances, the identified acts or omissions were outside the wide

9

range of professionally competent assistance." *Id.* There is a strong presumption that the performance of counsel falls within this range. *United States v. Samuels*, 59 F.3d 526, 529 (5th Cir. 1995). Defendant cannot overcome this presumption with after-the-fact accusations that lack supporting evidence. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (noting that although pro se § 2255 motions are construed liberally, even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue"); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value."). If counsel provides objectively unreasonable representation during the plea process, the defendant must prove prejudice by showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

To prove prejudice generally, a defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This showing "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Failure to meet either the deficient-performance or prejudice prongs will defeat a claim of ineffective-assistance. *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000). The reviewing court need not address both components if there is an insufficient showing on one. *Id.*

**C. GROUND ONE – Claim Counsel Delayed in Seeking a Continuance until after Trial Began.**

Garza first claims that trial counsel Brown "was ineffective for delaying the requested continuance until trial had already been under way before informing the Court of Garza's retained counsel." Brief 8, ECF No. 1-1. He further alleges that "[c]ounsel had no reason to delay requesting a continuance so that Garza could proceed with his retained counsel of choice prior to the start of trial," and his "failure here" deprived Garza of his counsel of choice. *Id.* He alleges that he was prejudiced because the "deprivation was 'complete' as soon as he was denied his right to the attorney of his choosing." *Id.*

1. <u>Garza has failed to show counsel's representation was deficient.</u>

First, Garza's claim about Brown's purported delay in telling the Court about his newly retained counsel is factually incorrect and belied by the record. Specifically, the record shows that Garza informed Brown *for the first time* at the rearraignment hearing that his family may have hired another attorney. Brown told the Court: "Mr. Garza does tell me that his family, and I contacted his sister this morning, has hired another attorney. I'm anticipating I'll be substituted out. I don't know who the new attorney might be." Rearraignment Tr. 4-5, CR ECF No. 320. When asked directly if he knew who this attorney was, however, Garza replied that "[a]t this time I don't sir. My sister's taking care of all that." *Id.* at 5. Regardless, the Court told Garza that the jury would be reporting for duty on his trial the following day. *Id.* at 6.

The following day, the parties proceeded with voir dire, and after a recess Brown again told the Court that a different attorney had been hired:

> I have been strongly urged by Mr. [Garza] to request a continuance of this trial. Apparently, an attorney has been hired. I don't have confirmation of that, but he

11

> hired an attorney that, in Mr. Garza's opinion, did not give him a good service, requested that the first attorney be fired – that's how I was appointed -- and his family is, apparently, put earnest money down for Mr. Day [Carl Day] . . . And I placed a call into Mr. Day's office. Mr. Garza gave me the telephone number. Again, I'm urging a continuance.

Trial Tr. Volume 1, 57-58, CR ECF No. 321. The Court orally denied the motion, and then later the same day entered an order explaining its reasons. *Id.* at 58; Order Denying Mot. Continuance 1-2, CR ECF No. 243. The Court did not, however, bar Garza's counsel of choice from participating in the trial, had he chosen to do so.

This record precludes any showing of constitutionally deficient performance by Brown. Instead, the record shows that Brown informed the Court at the rearraignment hearing that—after months of representing Garza and even obtaining a continuance to prepare for his trial—Garza had *just* informed Brown that his family had apparently hired another attorney. Order Denying Mot. Continuance 1, CR ECF No. 243 (explaining that "[o]n February 18, 2020, defense counsel notified this Court that his client—Defendant Paul Garza—intended to replace him with another attorney.") Indeed, Brown had already attempted to reach Garza's sister that morning to confirm this information. Brown told the Court at the time that he anticipated being "substituted out," but stated that he did not yet know who the new attorney was. And when questioned, Garza could not provide any further information either. The Court told Garza trial would proceed the next day—in other words, his new counsel needed to be prepared to proceed.

Garza does not offer any explanation for what more Brown could have done at this stage—Brown contacted Garza's family, sought additional information, and informed the Court that another attorney was likely to be substituted. The following day, after the trial commenced as scheduled, the record indicates that Brown informed the Court as soon as Garza confirmed

12

that another attorney had been hired. Garza himself had been unable to provide any information about the attorney or to confirm that he had been hired before this time.

Garza does not allege, much less offer evidence, that Brown was ever informed that another attorney had been hired *before* voir dire began. Instead, the record shows that Garza was uncertain about the identity or status of new counsel at his rearraignment the day before; that Brown attempted to reach Garza's family to get more information; that Brown attempted to contact the new attorney as soon as Garza informed him of the hiring; and that Brown was prepared to proceed with his representation of Garza at trial in any event. Only when Garza gave him more concrete information did Brown then advocate for a continuance. There was simply nothing more Brown could have done under these facts, and Garza cannot meet the first *Strickland* prong. *See Vega v. United States*, No. 3:17-cr-341-B(4), 2023 WL 3484216, at *4 (N.D. Tex. May 1, 2023), *rep. and rec. adopted*, No. 3:17-cr-341-B(4), 2023 WL 3491741 (N.D. Tex. May 16, 2023) ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.") (citing *Strickland*, 466 U.S. at 691).

        2.     <u>Garza has failed to establish prejudice.</u>

Although the Court need not reach the second *Strickland* prong, Garza has not shown prejudice. "To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Garza now claims that Brown's "failure here deprived Garza of his Sixth Amendment right to counsel of choice, thus prejudicing Garza." Brief 6-8,

13

ECF No. 1-1 (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006)). He makes no other arguments as to prejudice for this claim.

Garza's reliance on *Gonzalez-Lopez* does not support a prejudice determination. In that case, the defendant was raising a post-conviction claim under the Sixth Amendment right to counsel, and the government agreed that the district court had erroneously deprived the defendant of his counsel of choice. *Gonzalez-Lopez*, 548 U.S. at 144. The Supreme Court explained that the crux of the Sixth Amendment violation in that case was the erroneous deprivation of counsel. *Id.* at 146. Where such erroneous deprivation occurs, no additional showing of prejudice was required. *Id.*

But Garza cannot rely on the *Gonzalez-Lopez* case for multiple reasons. First, Garza does not assert a Sixth Amendment right-to-counsel claim. Instead, he raises an ineffective-assistance-of-counsel claim based on the timing of a motion for continuance. Brief 8, ECF No. 1-1. The Supreme Court explicitly recognized the distinction between these two types of claims in *Gonzalez-Lopez*. The Court explained that an ineffective-assistance claim still requires a defendant to make a separate showing of prejudice. *Gonzalez-Lopez*, 548 U.S. at 147. That is because "a violation of the Sixth Amendment right to *effective* representation is not 'complete' until the defendant is prejudiced." *Id.* (citing *Strickland*, 466 U.S. at 685) (emphasis in original). Because Garza does not even attempt to show prejudice, his claim fails under *Gonzalez-Lopez* and *Strickland*.

Moreover, Garza's counsel was not denied, much less denied erroneously, so *Gonzalez-Lopez* has no import here. Even though Garza waited months to attempt to retain new trial counsel, the Court did not bar this new attorney from participating in the trial. Rather, the

14

proposed third counsel never entered an appearance and never appeared for trial. And the Court's denial of a continuance for this new counsel was not erroneous. As the Fifth Circuit explained on direct appeal, Garza was required to demonstrate "an abuse of discretion that seriously prejudices the defendant." *United States v. Garza*, No. 20-10599, 2021 WL 6102533 at *1 (5th Cir. Dec. 23, 2021). The Fifth Circuit concluded that the "totality of the circumstances here, with consideration of fairness factors, demonstrates that the district court's denial of the motion for continuance was neither arbitrary nor unreasonable." *Id.* (citation omitted). The appellate court cited three specific facts in support: (1) Garza's request was not made until after voir dire was completed; (2) he offered no reason for replacing counsel or for his delay; and (3) he had not shown that he was seriously prejudiced by the denial of his request. *Id*. (citation omitted). Garza claims that the Fifth Circuit affirmed this Court's decision solely because voir dire had been completed when the continuance was requested. Brief 7, ECF No. 1-1. But as recited, the Fifth Circuit listed several reasons.

Furthermore, Garza ignores the fact that Brown had informed the Court of the prospect of new counsel the day before voir dire occurred, as soon as Garza relayed this information to him. Order Denying Mot. Continuance 1, CR ECF No. 243 (explaining that defense counsel had notified the Court that Garza intended to replace him with another attorney on February 18, the day before trial began). When Garza could not identify that lawyer or provide any further information, the Court informed Garza that the trial would proceed as planned. Garza offers no explanation for how that fact would have changed if Brown had asked for the continuance before voir dire rather than after the recess. The record shows that it would not have mattered.

15

The Court explained in its written order denying the continuance that several facts supported its denial, including that: (1) Garza was already given a prior continuance; (2) Garza "decided to only notify the Court that he was replacing his attorney—an attorney appointed months ago after he fired his first attorney—the week of trial"; and (3) Garza only moved for a continuance after voir dire was completed. *Id.* at 1-2. The timing of the continuance request was but one variable in the equation, and Garza makes no attempt to show that making that request a few hours earlier would have changed the outcome.

In sum, the record shows that Garza's delay (or that of his family) caused the Court to deny the continuance, not his counsel's behavior. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). Garza has not demonstrated an erroneous denial of counsel, or that he suffered any prejudice from Brown's conduct. Ground one must be denied.

### D.     GROUNDS TWO through SIX –Claims are Vague and Conclusory.

Garza attempts to incorporate by reference into this § 2255 proceeding the same ineffective-assistance-of-counsel claims he raised on direct appeal. Brief 9, ECF No. 1-1. He cannot do so. As another district court explained:

> Rule 2 of the Rules Governing § 2255 Proceedings requires that the motion set forth the grounds for relief and a summary of the facts supporting each of the grounds. As such, Movant cannot incorporate by reference all of the arguments he raised on direct appeal simply by attaching his appellate brief to his Section 2255 Motion. Rather, Movant must specifically identify the grounds on which he is seeking collateral relief and articulate the facts in support of each claim in his Section 2255 Motion.

*Gardea v. United States*, No. 13-cv-0012, 2014 WL 12700622 at *7 (W.D. Tex. Dec. 10, 2014), *rep. and rec. adopted*, 2015 WL 13375768 (W.D. Tex. Jan. 22, 2015). Garza's "incorporation by reference" of ineffective assistance claims and failure to articulate those claims with all supporting facts warrants summary dismissal of these claims.

Alternatively, Garza's remaining claims fail on their merits because they are vague and conclusory. As noted, Garza claims that Brown failed to (1) file any pretrial motions, "despite Garza's request to challenge the admission of evidence s[e]ized from his sister's residence;" (2) file any discovery-related motions; (3) object to starting trial the day after his rearraignment; (4) offer witnesses or other defenses at trial; or (5) submit a sentencing memorandum or any objections to the PSR. Brief 9, ECF No. 1-1.

In reviewing these claims, however, it is clear that Garza does not specify (1) what pretrial motions he alleges should have been made; (2) what discovery motions he alleges should have been filed; (3) why starting trial after months of preparation on the same charges and facts as reflected in the original indictment was somehow objection-worthy; (4) what witnesses or "defenses" he claims should have been offered at trial; and (5) what he alleges should have been objected to in the PSR or facts that should have been offered in a sentencing memorandum. These deficiencies render each of his claims fatally vague and conclusory. *See United States v. Woods*, 870 F.2d 285, 287 n. 3 (5th Cir. 1989) ("[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue"); *United States v. Opiyo*, No. 4:10-cr-168-A-1, 2013 WL 4804193, at *4 (N.D. Tex. Sept. 6, 2013) ("Movant fails to provide any facts at all that could demonstrate that his attorney's investigation and conduct in the adversarial process were

17

anything other than objectively reasonable. Therefore, movant's conclusory allegation cannot satisfy the *Strickland* standard for ineffective assistance of counsel.")

Additionally, Garza again fails to demonstrate prejudice. He vaguely asserts that the above allegations "deprived [him] of a fair trial" and "raise[] a reasonable probability that, but for counsel's errors, Garza would have received a lesser sentence." Brief 9-10, ECF No. 1-1. These allegations of prejudice are plainly insufficient under *Strickland*, since Garza does not even attempt to specify how he was deprived of a fair trial or how a lesser sentence would have resulted. *See Burgess v. United States*, No. 4:19-cr-0362-P(3), 2021 WL 4399758, at *2 (N.D. Tex. Sept. 27, 2021), *cert. of appealability denied*, No. 21-11041, 2022 WL 13592020 (5th Cir. May 3, 2022) ("'The likelihood of a different result must be substantial, not just conceivable,' and a movant must prove that counsel's errors 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'") (citing *Harrington*, 562 U.S. at 112 and *Cullen*, 563 U.S. at 189)). "Simply making conclusory allegations of deficient performance and prejudice is not sufficient to meet the *Strickland* test." *Id.* (citing *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)). Garza's § 225 motion asserting the remaining ineffective-assistance grounds fails on both *Strickland* elements.

For all of these reasons, Paul Garza's § 2255 motion must be denied.

## IV. CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Fed. R. App. P. 22 (b). Rule 11 of the Rules Governing Section 2255 Proceedings now requires the Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing

Section 2255 Proceedings in the United States District Courts, Rule 11(a) (December 1, 2009). This Court may only issue a COA if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by showing "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The Court concludes that Paul Garza has not made a showing that reasonable jurists would question this Court's rulings and, accordingly, **DENIES** a certificate of appealability for the reasons stated in this order.

V.  **CONCLUSION and ORDER**

It is therefore **ORDERED** that Paul Garza's motion to vacate under 28 U.S.C. § 2255 (ECF No. 1) is **DENIED.** It is further **ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED** this **8th day** of **November, 2023**.

                                              Reed O'Connor
                                          **UNITED STATES DISTRICT JUDGE**